UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

ISAIAH JAMES WOODEN,

    Plaintiff,

v.                                                                    Case No. 5:21-cv-46-TKW/MJF

DOLGENCORP, LLC,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

Plaintiff Isaiah James Wooden initiated this Title VII action against Defendant Dolgencorp, LLC. Wooden asserts two claims: a claim of disparate-treatment discrimination based on race and color, and a retaliation claim. Dolgencorp moves to dismiss Wooden's claims for failure to state a claim upon which relief can be granted. Docs. 23, 23-1. Wooden has responded in opposition. Doc. 25. Because Wooden has failed to state a plausible claim for relief, the District Court should grant Dolgencorp's motion to dismiss.

**I. BACKGROUND**

From June 2019 to June 2020, Dolgencorp employed Wooden as a sales associate at a Dollar General store in Alford, Florida. Doc. 19 at 5, 8. On March 14,

2020, a customer grabbed Wooden and coughed on him.[1] *Id.* at 5 ¶ 8; Doc. 19-1 at 2.[2] Wooden reported the incident to the store manager, and after Wooden identified the customer, the store manager spoke with the customer. Doc. 19 at 5 ¶ 9; Doc. 19-1 at 2. The customer angrily left the store. Doc. 19-1 at 2. Later that day, Wooden told the store manager that he wanted to file a police report. *Id.*; Doc. 19 at 5 ¶ 9. The store manager said that she would speak with the store's district manager the following morning. Doc. 19-1 at 2.

The next day, March 15, 2020, Wooden gave the store manager a "facts letter," which detailed his interaction with the customer who coughed on Wooden. Doc. 19 at 5 ¶ 10; Doc. 19-1 at 2. The store manager refused to file a police report even though "policy" dictated that she do so. Doc. 19 at 5 ¶ 10. The store manager stated that she would not file a police report because there was no video recording of the incident and, therefore, she could not ban the customer from the store.

---

[1] The facts stated herein are drawn from Wooden's third amended complaint and are presumed to be true for purposes of this report and recommendation.

[2] At the motion-to-dismiss stage, a court may consider documents that "are referred to in the complaint, central to the plaintiff's claim, and of undisputed authenticity." *Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1189 (11th Cir. 2018). Wooden's "facts letter" and "review letter," which are attached to and referred to in the third amended complaint, contain allegations central to Wooden's claims. Doc. 19-1 at 2-3. Additionally, Dolgencorp has not disputed the authenticity of these documents. *Luke v. Gulley*, 975 F.3d 1140, 1144 (11th Cir. 2020) ("A document is considered undisputed when the authenticity of the document is not challenged.") (citation omitted).

Doc. 19-1 at 3. She told Wooden, however, that he could file a police report himself. Doc. 19 at 5 ¶ 10.

On March 16, 2020, Wooden gave the store manager a "review letter," which detailed Wooden's conversation with the store manager the day before and explained why Wooden disagreed with her decision not to file a police report. *Id.* at 5 ¶ 12; Doc. 19-1 at 3. Later that day, someone "assaulted" Wooden. Doc. 19 at 5 ¶ 13. Wooden does not identify the attacker and he does not describe the nature of the assault.

Wooden reported this assault to the store manager, but the store manager took no action. *Id.* at 5 ¶¶ 13-14. Additionally, at some point before the March 14, 2020 incident, the store manager asked Wooden, "[H]ow has being black affected you here?" *Id.* at 5 ¶ 11.

On June 14, 2020, Wooden's employment ended. *Id.* at 8. Wooden is ambiguous about the conclusion of his employment relationship with Dolgencorp. First, in two previous complaints, Wooden alleged that Dolgencorp "constructively discharged" him. Doc. 1 at 5; Doc. 4 at 6 ¶ 17; Doc. 6 at 6 ¶ 17. In his third amended complaint, however, Wooden abandons his constructive-discharge theory and alleges for the first time that he was "terminated." Doc. 19 at 6-7 ¶¶ 21, 34. To further confuse matters, in his response to Dolgencorp's motion to dismiss, Wooden

contends that Dolgencorp *both* terminated *and* constructively discharged him.[3] Doc. 25 at 12.

In his third amended complaint, Wooden asserts two claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e-2(a). First, Wooden asserts a disparate-treatment claim. He alleges that the store manager's decisions not to file a police report or transmit Wooden's letters to "corporate," as well as her question, were adverse employment actions motivated by Wooden's race and color. Doc. 19 at 5-6 ¶¶ 11, 14-17, 23, 25. Second, Wooden asserts a retaliation claim. He alleges that Dolgencorp retaliated against him—by threatening to terminate his employment and then by actually terminating his employment—because he objected to the store manager's decisions not to file a police report or transmit Wooden's letters to "corporate." *Id.* at 6-7 ¶¶ 19-20, 21, 34.

## II. STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes defendants to move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed.

---

[3] When an employer actually discharges an employee, there is no need to claim a "constructive" discharge. *See Green v. Brennan*, 578 U.S. 547, 560 (2016) ("The whole point of allowing an employee to claim 'constructive' discharge is that in circumstances of discrimination so intolerable that a reasonable person would resign, we treat the employee's resignation as though the employer actually fired him."). In any event, Wooden has failed to allege circumstances that were so intolerable that a reasonable person would have resigned.

R. Civ. P. 12(b)(6). At the motion-to-dismiss stage, the court accepts all well-pleaded factual allegations of the complaint as true and evaluates all reasonable inferences derived from those facts in the light most favorable to the plaintiff. *Newbauer v. Carnival Corp.*, 26 F.4th 931, 934 (11th Cir. 2022) (citation omitted). For a claim to survive dismissal, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," rather than the mere possibility that the defendant acted unlawfully. *Id.* (citing *Twombly*, 550 U.S. at 556). That is, the complaint's factual allegations must be "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see Iqbal*, 556 U.S. at 678 (reiterating that Federal Rule of Civil Procedure 8 demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." *Doe v. Samford Univ.*, 29 F.4th 675, 685-86 (11th Cir. 2022) (quotation omitted).

Courts "hold the allegations of a *pro se* complaint to less stringent standards than formal pleadings drafted by lawyers." *Campbell v. Air Jam. Ltd.*, 760 F.3d

1165, 1168 (11th Cir. 2014). But federal courts "cannot act as de facto counsel or rewrite an otherwise deficient pleading to sustain an action." *Bilal v. Geo Care, LLC*, 981 F.3d 903, 911 (11th Cir. 2020) (citation omitted).

### III. DISCUSSION

Dolgencorp has moved to dismiss both Wooden's disparate-treatment claim and his retaliation claim. Docs. 23, 23-1.

A.    **Wooden Fails to State a Plausible Disparate-Treatment Claim**

Title VII prohibits an employer from, among other things, "discharg[ing] any individual, or otherwise . . . discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race [or] color." 42 U.S.C. § 2000e-2(a). Title VII claims of intentional discrimination, such as Wooden's, are known as "disparate-treatment" claims. *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009).

To prevail on a disparate-treatment claim, a plaintiff ultimately must show that an employer intentionally discriminated against him on the basis of a protected characteristic, such as race or skin color. *E.E.O.C. v. Catastrophe Mgmt. Sols.*, 852 F.3d 1018, 1024 (11th Cir. 2016) (citing *Ricci*, 557 U.S. at 577). That is, a plaintiff must show (1) an adverse employment action (2) "because of" (3) the plaintiff's protected characteristic. *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768,

772 (2015); *Davis v. District of Columbia*, 925 F.3d 1240, 1241 (D.C. Cir. 2019); *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 920 (11th Cir. 2018) (citations omitted). To survive a motion to dismiss, however, a plaintiff's well-pleaded factual allegations need only plausibly suggest that "the plaintiff suffered an adverse employment action due to intentional racial discrimination." *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015) (per curiam); *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019); *see McCone v. Pitney Bowes, Inc.*, 582 F. App'x 798, 801 (11th Cir. 2014) (noting that although the prima-facie elements are an evidentiary standard, after *Iqbal* a plaintiff plausibly must allege the elements of a discrimination claim).

### 1.     *Wooden Fails to Allege an Adverse Employment Action*

A plaintiff asserting a disparate-treatment claim first must plausibly allege that he suffered an adverse employment action, *i.e.*, "a serious and material change in the terms, conditions, or privileges of employment." *Holland v. Gee*, 677 F.3d 1047, 1057 (11th Cir. 2012) (quoting *Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001)). Such actions include "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998); *Davis v. Legal Servs. Ala., Inc.*, 19 F.4th 1261, 1266 (11th Cir. 2021).

Wooden identifies three phenomena that he contends constitute "adverse employment actions":

(1) the store manager refused to file a police report, even though it was "policy" to do so;

(2) the store manager refused to file Wooden's "review letter" with "corporate"; and

(3) the store manager "blatantly" asked Wooden "derogatory questions regarding the impact to the store because of [Wooden's] race."

Doc. 19 at 6 ¶ 25.

The store manager's decisions not to file a police report and not to transmit Wooden's letters to "corporate" are not adverse employment actions because those decisions did not cause "a serious and material change in the terms, conditions, or privileges" of Wooden's employment. *Holland*, 677 F.3d at 1057 (quoting *Davis*, 245 F.3d at 1239). Additionally, the store manager's act of posing a question to Wooden—"[H]ow has being black affected you here?"—is not an adverse employment action because simply making a comment or posing a question is not an adverse employment action. *See Howard v. Bd. of Educ. of Memphis City Schs.*, 70 F. App'x 272, 280 (6th Cir. 2003) (holding that "racially insensitive comments may have been offensive" but did not constitute "an adverse employment action"); *Sellers v. Deere & Co.*, 23 F. Supp. 3d 968, 983 (N.D. Iowa 2014) (holding that

"having to endure rude or disrespectful comments" or questions "does not constitute an adverse employment action"). Indeed, Wooden does not allege any facts which indicate that his manager's act of posing a question to Wooden had any adverse consequences.

To the extent Wooden is alleging that the store manager's question is evidence of hostile-environment harassment, Wooden's allegations do not plausibly suggest that his workplace was "permeated with discriminatory intimidation, ridicule, and insult" that were "sufficiently severe or pervasive" to alter the conditions of employment and "create an abusive working environment." *Smelter v. S. Home Care Servs. Inc.*, 904 F.3d 1276, 1284 (11th Cir. 2018) (internal quotation marks omitted) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). It takes much more than one ambiguous question to create a hostile work environment. *Id.*

For these reasons, Wooden has failed to allege facts which indicate that he suffered an adverse employment action. That failure itself is fatal to Wooden's disparate-treatment claim.

### 2. *Wooden Fails to Allege Causation*

Even if Wooden had alleged that he suffered an adverse employment action regarding his disparate-treatment claim, Wooden's disparate-treatment claim fails for a second, independent reason: he failed to allege discriminatory causation.

A plaintiff suffers an adverse employment action "because of" a protected characteristic if the plaintiff's protected characteristic was a motivating factor for the adverse employment action. *Abercrombie & Fitch Stores, Inc.*, 575 U.S. at 773; *Ricci*, 557 U.S. at 577 (noting that Title VII prohibits an employer from discriminating against an individual "because of such individual's race" or color) (citation omitted); *Catastrophe Mgmt. Sols.*, 852 F.3d at 1026 ("The question in a disparate treatment case is 'whether the protected trait actually motivated the employer's decision.'") (ellipses and internal quotation marks omitted) (quoting *Raytheon Co. v. Hernandez*, 540 U.S. 44, 52 (2003)). A plaintiff's race or color need not be the only thing that motivated an adverse employment action, but to violate Title VII, it must be at least one of the motivating factors. *Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016) (first quoting 42 U.S.C. § 2000e-2(m); then citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Wooden asserts that his "race and/or color" was a motivating factor in the alleged adverse employment actions. Doc. 19 at 6 ¶ 27. The only allegation Wooden offers in support of this assertion is that Dolgencorp's "employees and/or agents . . . blatantly ask[ed] [him] derogatory questions regarding the impact to the store because of his race." *Id.* at 5 ¶ 25. This allegation is ambiguous at best. Aside

from the store manager's question—which itself is ambiguous—Wooden fails to allege:

- the person or persons who posed derogatory questions to Wooden;

- the number of instances someone asked Wooden a derogatory question;

- whether the person who posed the derogatory questions was employed by Dolgencorp and, if so, what position that person held;

- the nature and content of any derogatory questions; and

- the dates that these derogatory questions were posed to Wooden.

Absent at least some of this information, Wooden cannot state a claim upon which relief can be granted.

Furthermore, Wooden's allegations undermine his claim that any alleged adverse employment decision was based on Wooden's "race and/or color." According to Wooden, the store manager acted adversely—by declining to file a police report—because the "customer coughing" incident was not video recorded and, therefore, she could not ban the customer from the store.[4] Doc. 19-1 at 3. Thus, according to Wooden's own allegations, the store manager—the only Dolgencorp employee he identifies in his third amendment complaint—did not act on the basis of Wooden's race or color, but because the incident was not video recorded.

---

[4] It is worth noting that the only witness to the March 14, 2020 incident stated that she "didn't want to be involved." Doc. 19-1 at 3.

Because Wooden has failed to allege two essential elements of a claim of disparate-treatment discrimination, he has failed to state a claim upon which relief can be granted and the claim should be dismissed.

**B.     Wooden Fails to State a Plausible Retaliation Claim**

"Title VII's antiretaliation provision forbids employer actions that 'discriminate against' an employee . . . because he has 'opposed' a practice that Title VII forbids or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006) (quoting 42 U.S.C. § 2000e-3(a)); *Tolar v. Bradley Arant Boult Commings, LLP*, 997 F.3d 1280, 1289 (11th Cir. 2021). A prima-facie case of retaliation under Title VII consists of three elements:

(1)     the plaintiff engaged in statutorily-protected activity;

(2)     the plaintiff suffered an adverse employment action; and

(3)     the adverse employment action was causally related to the plaintiff's protected expression or action.

*Tolar*, 997 F.3d at 1289 (citing *Johnson v. Miami-Dade Cnty.*, 948 F.3d 1318, 1325 (11th Cir. 2020)); *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1134-35 (11th Cir. 2020) (en banc). A complaint must allege "sufficient facts to allow the court to draw the reasonable inference" that the essential elements of a retaliation

claim are satisfied. *Boyle v. City of Pell City*, 866 F.3d 1280, 1286 (11th Cir. 2017); *see McCone*, 582 F. App'x at 801.

### 1.   *Wooden Fails to Allege Statutorily-Protected Activity*

With respect to the first element, statutorily-protected activity includes opposing an employment practice made unlawful by Title VII. *Northington v. H & M Int'l*, 712 F.3d 1062, 1065 (7th Cir. 2013); *Collins v. Compass Grp., Inc.*, 965 F. Supp. 2d 1321, 1340 (N.D. Ala. 2013) (noting that statutorily-protected activity "includes complaining to superiors of harassment or discrimination and lodging complaints with the EEOC") (citation omitted)). But not all complaints to management constitute statutorily-protected activity for purposes of Title VII's retaliation provision. *See Northington*, 712 F.3d at 1065. Instead, to be protected by Title VII's anti-retaliation provision, communications with management must be acts of opposition to prohibited discrimination. *Miller v. Chi. Transit. Auth.*, 20 F.4th 1148, 1155 (7th Cir. 2021) ("Merely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient.") (quoting *Tomanovich v. City of Indianapolis*, 457 F.3d 656, 663 (7th Cir. 2006)); *Lopez v. Whirlpool Corp.*, 989 F.3d 656, 665 (8th Cir. 2021) (holding that a plaintiff did not engage in statutorily-protected activity because she did not "tie [her] complaint to any discrimination"). Furthermore, in making the communication to his employer, a plaintiff must have

"had a good faith, reasonable belief that the employer was engaged in unlawful employment practices." *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311-12 (11th Cir. 2002) (quotation omitted).

>Wooden's "review letter" contained the following allegations:
>
>I was assaulted by a customer while I was on the clock and performing a propane exchange a witness saw the customer grab me in a kidnapping manor from behind and coughed on my face I then proceeded curse him out I walked in the store and he followed.
>
>I returned to work with the [facts letter]. As I walk in I clocked In and look for [the store manager]. I spotted her and began walking towards her. She then directed me to go in the break room and write my statement. I walked to the break room then walked back to her and asked, "I had typed it the other day, do you want me to write it down with pen?" She Then stated, "No that's fine." And began walking to the break room behind me, she asked to read it and had me sign it. After signing she said, "I can not ban him from the store, because what happened was not on camera." Also she stated, "Since it wasn't on camera and I can't ban him I can't file a police report." She then told me that the witness told her she didn't want to be involved. She proceeded to ask if I wanted to call the Sheriff it would be personal and not Involve my employer Dollar General. I then stated let's go ahead and submit this statement and I'll wait for corporate. I then left the room and began my shift. For the reasons stated above I am not in agreement with [the store manager's] statement. That she can't ban him from the store nor file a police report when [the store manager] had a conversation with the customer and asked me to ID him it was then she began speaking with him. She herself is a witness to the ID of the customer and the admittance of the assault. I am requesting a review from corporate and I expect an email regarding the incident.

Doc. 19-1 at 3 (all errors in original). In his "review letter," Wooden never alleges that the store manager's actions were motivated by Wooden's race or color. Additionally, although Wooden repeatedly alleges that he engaged in "statutorily

protected conduct," the only elaboration Wooden offers is that he disagreed with the store manager's decisions not to file a police report or submit his letters to "corporate." Doc. 19 at 6 ¶ 20.

Furthermore, Wooden includes with his response to Dolgencorp's motion to dismiss an email dated June 1, 2020, which he sent to the district manager of the Dollar General store at which Wooden was employed. Doc. 25 at 17. That email, like Wooden's "review letter," fails to mention any discriminatory action attributable to Dolgencorp based on Wooden's race or color.

In an attempt to overcome his failure to complain of discrimination, Wooden argues that he did not "use the word 'discrimination'" in his letters because he feared that using that word would result in an adverse employment action. *Id.* at 7. Assuming this is true, this still will not save his claim. Statutorily-protected activity is an essential element of a retaliation claim. *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1304 (11th Cir. 2016). A complaint that is not apparently connected to discrimination is not statutorily-protected activity. *See Northington*, 712 F.3d at 1065 ("Vague and obscure 'complaints' do not constitute protected activity."). Wooden's failure to complain of unlawful conduct motivated by his race or color, therefore, is fatal to his retaliation claim. *Miller*, 20 F.4th at 1155 (quoting *Tomanovich*, 457 F.3d at 663); *Logan v. City of Chicago*, 4 F.4th 529, 539 (7th Cir.

2021) (noting that a complaint "must involve discrimination that is prohibited by Title VII") (quotation omitted); *Lopez*, 989 F.3d at 665.

For these reasons, Wooden has failed to allege that he engaged in statutorily-protected activity. That failure itself is fatal to Wooden's retaliation claim under Title VII.

### 2.    *Wooden Fails to Allege Facts Demonstrating Causation*

Wooden's retaliation claim fails for a second, related reason. A plaintiff who asserts a retaliation claim also must plausibly allege that his statutorily-protected activity was the "but-for" cause of the adverse employment action that he suffered. *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013). That is, "the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Id.* at 360. To do so, a plaintiff plausibly must allege that "the decision-maker[s] [were] aware of the protected conduct, and that the protected activity and the adverse action were not wholly unrelated." *McCann v. Tillman*, 526 F.3d 1370, 1376 (11th Cir. 2008) (quoting *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 590 (11th Cir. 2000)).

As noted above, Wooden has not plausibly alleged that he engaged in statutorily-protected activity. Wooden's activity, therefore, cannot be the "but for" cause of the adverse employment actions of which Wooden complains. For this

second reason, too, Wooden has failed to state a claim of retaliation upon which relief can be granted.

## IV. CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that the District Court:

1. **GRANT** Dolgencorp's motion to dismiss. Doc. 23.

2. **DISMISS** with prejudice Wooden's Title VII disparate-treatment claim of race and color discrimination for failure to state a claim upon which relief can be granted.

3. **DISMISS** with prejudice Wooden's Title VII retaliation claim for failure to state a claim upon which relief can be granted.

4. Order the clerk of the court to close this case.

At Pensacola, Florida, this <u>11th</u> day of May, 2022.

/s/ *Michael J. Frank*
Michael J. Frank
United States Magistrate Judge

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the**

**district court's order based on unobjected-to factual and legal conclusions.** ***See*** **11th Cir. Rule 3-1; 28 U.S.C. § 636.**